Black P.J.,
This case comes before the court on a Petition for Judicial Review of a decision of the Brookline Rent Control Board (hereinafter referred to as “the Board”), brought pursuant to Article XXXVIII, Section 10, of the By-Laws of the Town of Brookline and G.L. c. 30A, § 14. The plaintiffs challenge a decision of the Board in setting the “initial maximum rent” for a three-family rent controlled building located at 42 Jamaica Road, Brookline, Massachusetts. The matter was initially heard by a judge of the Brookline Division. After briefs and argument, he entered a judgment affirming the Board’s decision as to rental unit #2 and reversing, in part, the Board’s decision with respect to rental unit #1. The Board has fully complied with the trial judge’s order regarding rental unit # 1 and has not requested a report of the judge’s rulings. The plaintiffs, however, claim to be aggrieved by the judge’s decision and as it relates to rental unit #2.
The appellate record discloses that on November 18, 1983, Michael Zackman, as Trustee of Z-Man Realty Trust, a nominee trust of which Michael Tack and Jeffrey Cohen were the sole beneficiaries, took title to the three-family dwelling located at 42 Jamaica Road, Brookline, Massachusetts. Thereafter, he applied to the Board for a Certificate of Exemption from rent control. On or about September 2,1986, the board ruled, after an evidentiary hearing, that the subject property was not exempt from rent control because the plaintiff Zackman had no beneficial interest in the property, even though he occupied one of the three rental units. The Board’s decision was appealed to the Brookline Division, which affirmed the Board’s conclusion that Michael Zackman’s property interest was not sufficient to render the premises exempt from rent control, notwithstanding his occupancy of one of the rental units (Zackman v. Brookline Rent Control Board, Brookline Division Civil Docket No. 860568, dated May 8,1987). No further appeal was taken by the plaintiff in that case.
Due to the fact that the subject property had not been voluntarily registered as rent controlled property, the Board, on March 3,1987, voted to conduct a Board-initiated hearing to determine the initial maximum rents for the three *172 rental units at the subject property. On July 30,1987, Michael Zackman filed registration statements for 42 Jamaica Road with the Board. Hearings were conducted by a hearing examiner for the Board on August 5,1987, August 25, 1987 and December 17,1987, at which the plaintiff Zackman appeared with counsel, as did the tenants and one former tenant. The purpose of the hearing, was to fix the maximum rent that could be charged for units #1 and #2. Since only the maximum rent for unit #2 is in dispute, any further discussion of unit #1 is unnecessary.
The issue of the correct rent for unit #2 involves the application of Section 5(a) of the By-Law, which provides that “[I]f the rental unit was not a controlled rental unit at the time of the effective date of this By-Law but subsequently becomes a controlled unit, the maximum rent of said unit shall be the rent charged the occupant for the month six months prior to the date on which said unit became a controlled rental unit...” For the purpose of this case, the date when rent control became effective was November 18,1983, the date the plaintiff Zackman took title to the property from its prior owner, Elizabeth A. Norky.
During the course of the evidentiary hearing on the issue of the maximum allowable rent, the plaintiffs did not submit any evidence as to rent charged by the former owner, Mrs. Norky, prior to conveyance of the property to the plaintiffs. A former tenant, Helen Grauds, a woman in her seventies, who was in ill health and who preferred not to personally attend the hearing, furnished a sworn affidavit to the effect that she lived in Unit #2 at 42 Jamaica Road, Brookline, during 1982 and 1983, and for the entire time up to November 1983 her rent had been $200 per month. That in November 1983 the rent was increased to $525 per month because Mrs. Norky had told her that she could not sell the building with rents so low. A second sworn affidavit by Osvalds Purins, another former tenant at 42 Jamaica Road, stated that he had lived in Unit #3 during 1982 and 1983, during which time the rent was $200 per month. He further stated that Mrs. Helen Grauds had lived in Unit #2 during the same period of time and that her rent had also been $200 per month up until November 1983. Both affidavits were admitted into evidence over the objection of counsel for the plaintiffs. The hearing was continued to a new date for receipt of further evidence.
At the second hearing date, Osvalds Purins was present. He testified that during the last year that Mrs. Norky had owned the property, the rent of Unit #3, in which he had lived, was $200 per month. He produced several rent receipts signed by Mrs. Norky to confirm this fact. He further testified that he had known Mrs. Grauds for twenty years and that she had lived at 42 Jamaica Road for a period of time, left, and then returned. He further testified that they had talked about the rents they paid and that she had told him that she was also paying $200 per month for unit #2. In essence, his testimony corroborated his earlier affidavit. Mrs. Grauds was unable to be present because of her ongoing physical condition, namely high blood pressure and her nervousness over formal proceedings of any nature. Perhaps it should be noted that Mr. Purins also testified that for a period of time he had resided in Unit #2, but offered no testimony as to the rent , at the time. The hearing was again continued for the limited purpose of affording the plaintiffs, the tenants and the Board the opporunity to introduce evidence as to the service, if any, that had been included in Mrs. Narky’s rent.
On Thursday, December 17, 1987, the final phase of the hearing was concluded. Nothing of substance bearing on the issue of the maximum allowable rent for Unit #2 was added to the record of the proceedings, and the *173 record was closed. Parenthetically, it might be noted that the plaintiffs’ offered no evidence to contradict the testimony of Mr. Purins or the affidavit of Mrs. Grauds as to the fact that the monthly rental for unit #2 for the two years preceding the sale of the property to the plaintiff Zackman, as trustee of the Z-Man Realty Trust, was $200. Additionally, no effort appears to have been made by the plaintiffs to subpoena the prior owner, Mrs. Norky, or Mrs. Grauds. Althoughthe plaintiffs professed that they were unaware of Mrs.. Nork/s address, other than the fact that she lived some where in New Hampshire, the record strongly suggests that no real effort was made by them to secure her presence, or anyone else who had any direct knowledge of the rent charged for unit #2 at anytime prior to November 18,1983.
Following the conclusion of the hearing, the Board made the following findings of fact and rulings of law:

Determinations of Issues of Fact:

1. " On September 2, 1986, the Brookline Rent Control Board issued an Order of Denial of Certificate of Exemption, docket #1610, stating that “42 Jamaica Road is not exempt from rent control on the ground that said propertyis not an owner-occupied three-family house in according with Section 3(b)(5) of Article 38 of the By-Laws of the Town of Brookline.” (Ex. 2).
2. On March 3, 1987, the Brookline Rent Control Board voted to hold a Board-Initiated hearing to determine the initial maximum rents for 42 Jamaica Road (docket #126). (Ex. 1)
3. By deed dated November 18,1983 and recorded at the Norfolk County Registry of Deeds on November 21, 1983, Elizabeth Norky granted to Michael Zackman, Trustee of Z-Man Realty Trust 42 Jamaica Road. (Ex. 5, R. 6, R. 14)
4. Pursuant to the finding of fact in Order of Denial of Certificate of Exemption docket #1610, Michael Zackman holds record title to 42 Jamaica Road but is not the beneficial owner of 42 Jamaica Road. (Ex. 2)
5. 42 Jamaica Road became subject to rent control on November 18,1983.
6. Osvalds Purins lived at 42 Jamaica Road for-at least ten years. (Ex. 5, R. 50)
7. Although Mr. Purins originally lived on the second floor, in 1982 and 1983 he lived on the third floor on 42 Jamaica Road. (R. 50, R. 55)
8. During 1983, Helene Grauds lived on the second floor of 42 Jamaica Road (R. 55)
9. During at least the latter part of her ownership, Elizabeth Norky lived on the first floor of 42 Jamaica Road. (R. 50)
10. The rents charged for units two and three at 42 Jamaica Road for January 1, 1983 - November 30,1983 were as follows:
Jan. 1 - Oct. 31,1983 Nov. 1 - Nov. 30, 1983
Unit 2 $200.00 $525.00
Unit 3 $200.00
11. The rent for unit #3 in finding of fact #10 included the use of one parking space, and no other services. (Ex. 18, R. 63)._'_
The plaintiffs challenge the Board’s determination that the maximum allowable rent for unit #2 effective November 18,1983, was $200 per month, exclusive of a parking charge of $20, or a total monthly rent of $220, on the grounds that its decision is not supported by “substantial evidence.” The *174 plaintiffs’ stress that “some evidence” is not “substantial evidence,” citing Griffin's Brant Rock Package Store, Inc. v. A.B.C.C., 12 Mass. App. 768. (1981) They further contend that Sinclair v. Director Division of Employment Security, 331 Mass 101 (1954), should be controlling because the Supreme Judicial Court specifically held that:
“If the pertinent evidence is exclusively hearsay, this does not constitute ‘substantial evidence’ even before an administrative tribunal.”
The Board admits that the only evidence supporting its finding is “(1) hearsay testimony of Mr. Purins; (2) the signed and sworn affidavit of the tenant of that unit at that time, Mrs. Grauds; and (3) an inference from the direct testimony of Mr. Purins as to his own rent for a similar-sized unit at the property during the same time.” The Board contends that since the adoption of the Administrative Procedure Act, the Sinclair case has undergone significant erosion and that the standard used by the courts since 1954 has been the substantial evidence standard, as defined by G.L. c. 30A, §1(6), that is, “such evidence as a reasonable mind might accept as adequate to support a conclusion.” The Board suggests that the case of Embers of Salisbury, Inc. v. A.B.C.C., 401 Mass 526 (1988) is directly in point with the case at bar, citing the Supreme Judicial Court’s statement that:
“We think the [plaintiffs] misconstrue the teaching of Sinclair.. .the line we were drawing [in Sinclair] was not between evidence admissible in a court and evidence that is inadmissible because of the rules of evidence observed by courts, but between evidence having indicia or reliability and probative value and that which does not...
This was not a blanket rejection by the Court of administrative reliance on hearsay irrespective of reliability and probative value. The opposite was the case.’ [citation omitted]” Id. at 530.
In his judicial review of the plaintiffs’ petition, the trial judge carefully analyzed the Administrative Procedures Act, particularly sections 1(6) and 11(2), and the cases since Sinclair. He concluded that the evidentiary standard set forth in section 11(2) was controlling and that the Board’s decision was supported by substantial evidence, as it related to unit #2.
Whatever the present status of the Sinclair case may be, we are persuaded that “substantial evidence” in the context of the By-Law means “such evidence as a reasonable mind might accept as adequate to support a conclusion.” Clearly, hearsay evidence is admissible in hearings before the Board, (see G.L. c. 30A §11(2)), and the plaintiffs acknowledge this to be true. Applying this standard to the evidence introduced during the course of the Board’s hearing of this case, we conclude that the Board’s decision is supported by “substantial evidence,” albeit entirely hearsay, together with the reasonable inferences that might be drawn therefrom. Certainly, the affidavits of Mrs. Grauds and Mr. Purins, together with Mr. Purins testimony before the Board at the second hearing date, have the indicia of reliability and significant probative value. (See Embers of Salisbury, Inc. v. A.B.C.C., supra, at 530.) Additionally, nothing was offered by the plaintiffs which cast any cloud of doubt as to the accuracy, reliability or credibility of the information furnished by Mrs. Grauds and Mr. Purins through their affidavits or by Mr. Purins in his testimony before the Board. In the words of Judge Learned Hand, quoted in the Board’s brief “ [I]f this be not evidence I can see no way of getting any better, and the facts cannot be established at all. Surely, the law is not so unreasonable as that.”
As for the plaintiffs’ contention that they have been denied fundamental due *175 process by virtue of the Board’s failure to subpoena Mrs. Grauds, it is evident that the Board’s failure to require her attendance was due to her advanced years and ill-health. Nevertheless, the record is clear that had the plaintiffs requested the Board to subpoena her, it would have done so. As noted in the Embers case, the right to confront and cross-examine an adverse witness is not self-executing. Having failed to request that Mrs. Grauds be subpoenaed, the plaintiffs cannot be heard to complain about denial of due process.
The Board’s decision is affirmed.